SHIRLEY GOTTLIN[1] & another[2] vs. RUSSELL L. HERZIG &
others.[3]

No. 94-P-1894.

Franklin. December 19, 1995. - March 14, 1996.

Present: PERRETTA, GILLERMAN, & LAURENCE, JJ.

*Alcoholic Liquors*, License, Manager of premises, Sale to intoxicated person,
Alcoholic Beverages Control Commission. *Corporation,* Corporate entity,
Liability of officers. *Evidence,* Inflammatory evidence, Expert opinion.

General Laws c. 138, § 26, and 204 Code Mass. Regs. § 2.05 (2) do not es-
tablish a cause of action to hold liable persons named as managers of
establishments holding licenses to sell alcoholic beverages for injuries
suffered as a result of illegal conduct in or on the licensed premises.
[165-167]

In an action seeking to hold liable two defendants who managed a tavern
owned by a corporation of which the defendants were the sole stockhold-
ers for injuries resulting from a bartender's serving beverages to an
intoxicated person, the judge correctly granted the defendants' motion
for summary judgment, where evidence that the corporation allowed its
liquor liability insurance policy to lapse, with the result that the corpora-
tion could not meet a substantial judgment against it for the bartender's
negligence, was not sufficient to warrant looking beyond the corporate
form to hold the individual defendants liable. [167-170]

In a civil action there was no merit to plaintiffs' claim that individual
defendants were liable with a corporation on a "joint venture" theory;
that the judge improperly excluded certain evidence; that the judge
restricted the plaintiffs' expert evidence; or that the judge erred in
redacting certain information from a medical record. [170-171]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 19, 1991.

[1]As legal guardian of Patricia Beam.

[2]Robert Carlsen, as guardian ad litem of Amber Lee Mitchell, Steivie
Beam, and Christina Beam, the three minor children of Patricia Beam.

[3]David D. Baker and Linda Baker. The plaintiffs voluntarily dismissed
their claims against Herzig-Baker Corporation, doing business as Biffing-
ton's Tavern, a defendant in the companion case.

The case was heard by *George C. Keady, Jr., J.,* on motions for summary judgment.

*Leonard C. Reizfeld,* of Connecticut, for the plaintiffs.

*Jack D. Curtiss* for the defendants.

GILLERMAN, J. In the companion case decided this day,[4] *Gottlin v. Graves, ante* 0 (1996), we affirmed the judgments in favor of the plaintiff Shirley Gottlin, legal guardian of Patricia Beam, against Leland Graves and Herzig-Baker Corporation (corporation), the latter being the owner of the tavern known as Biffington's Tavern (tavern). The claim against the corporation was that the tavern served alcoholic beverages to Leland Graves after the bartender knew or should have known that Graves was intoxicated, in consequence of which Patricia Beam was seriously injured while a passenger in a motor vehicle owned and operated by Graves. At the time of the trial she remained in a comatose state. The judgments against Graves and the corporation were affirmed. The loss of parental consortium claim asserted by Beam's three minor children was remanded for a retrial on damages.

This action seeks to hold the defendants Herzig and Baker, the sole stockholders and "comanagers" of the corporation, liable for the injuries suffered by Beam, and for the loss of parental consortium suffered by her three children.

The complaint in this case includes six counts:

Count I alleges that the corporation allowed its liquor liability insurance policy to lapse, that the corporation was a sham, and that the assets of the corporation were wrongfully diverted to the defendants, leaving the corporation undercapitalized and without assets to satisfy Beam's claim.

Count II alleges that the individual defendants, as comanagers of the corporation, negligently failed to train and supervise the newly hired bartender who served Graves on the night of the accident.

Count III alleges that a joint enterprise existed among the corporation and the defendants (comanagers of the business and owners of the corporation), and that therefore the negligence of the corporation (by reason of the negligence of its bartender) may be imputed to the defendants.

Count IV alleges that the defendants violated G. L. c. 138, § 26 (requiring the appointment of a manager in each licensed

---

[4]The two cases were consolidated and later bifurcated for trial, at the request of the plaintiffs.

tavern who is satisfactory to the commission),[5] and the regulation thereunder, and that the violation provides a cause of action in favor of the plaintiff.

Count V alleges that Beam's injuries were caused by the gross negligence, recklessness and wantonness of the defendants.

Count VI sets up the consortium claim of Beam's three children against the defendants.

In response to cross motions for summary judgment, the judge first allowed the defendants' motion on counts I and III, and later allowed the defendants' motion on count IV while denying the plaintiffs' motion for summary judgment on counts II, V, and VI.

The case was tried to a jury on counts II, V, and VI. They returned special verdict findings that the defendants, "as co-managers of Biffington's Tavern," were not negligent in training or in failing to train the bartender, and were not negligent in supervising or in failing to provide any supervision of the bartender. Judgments for the defendants were then entered, and the plaintiffs' motion for judgment notwithstanding the verdict was denied. A timely notice of appeal was filed. We conclude that there was no error.

The plaintiffs argue six issues on appeal, only two of which (having to do with counts I and IV) warrant a detailed discussion.

*General Laws c. 138, § 26, and 204 Code Mass. Regs. § 2.05 (2)(1986).* The plaintiffs argue that G. L. c. 138, § 26,[6]

---

[5]The complaint inadvertently refers to G. L. c. 138, § 69, rather than § 26.

[6]General Laws c. 138, § 26, reads in pertinent part: "No corporation, organized under the laws of the commonwealth or of any other state or foreign country, shall be given a license to sell in any manner any alcoholic beverages unless such corporation shall have first appointed, in such manner as the licensing authorities by regulation prescribe, as manager or other principal representative, a citizen of the United States, and shall have vested in him by properly authorized and executed written delegation as full authority and control of the premises, described in the license of such corporation, and of the conduct of all business therein relative to alcoholic beverages as the licensee itself could in any way have and exercise if it were a natural person resident in the commonwealth, nor unless such manager or representative is, with respect to his character, satisfactory to the licensing authorities."

and 204 Code Mass. Regs. § 2.05(2) (1986)[7] establish a cause of action against defendants Herzig and Baker, and that therefore the judge erred in allowing the defendants' motion for summary judgment on count IV, and denying the plaintiffs' motion for summary judgment on the same count.

In substance, the plaintiffs argue that § 26 imposes on the person named as manager in the tavern's license — here, the defendant Herzig, together with his admitted "comanager," the defendant Baker — full control of, and thereby implicit responsibility for, the sale of alcoholic beverages at the tavern. This implied responsibility, the argument continues, is confirmed in 204 Code Mass. Regs. § 2.05(2), which provides that the licensee is responsible for any "illegality . . . on the licensed premises." Since the jury in *Gottlin* v. *Graves, ante* 155, found that the tavern's bartender had served an intoxicated person in violation of G. L. c. 138, § 69 (prohibiting the sale of an alcoholic beverage to an intoxicated person at a licensed tavern), the plaintiffs argue that the defendants Baker and Herzig are liable to the plaintiffs.

The judge correctly concluded that section 26 does not lead directly to the civil liability of a named manager for injuries suffered as a result of illegal conduct at the tavern. The obligation established by § 26 is the necessity of appointing a manager whose character is satisfactory to the authority granting the license, and vesting in the manager full authority and control of the licensed premises, including the sale of alcoholic beverages. The evident purpose of this provision is to assure the licensing authority that each licensee will be managed by a responsible person satisfactory to the granting authority, and that the granting authority, in executing its responsibilities under c. 138, will have available at all times a person whose responsibility for the conduct of the business of the tavern will be beyond challenge by any corporate licensee. See *New Palm Gardens, Inc.* v. *Alcoholic Beverages Control Commn.*, 11 Mass. App. Ct. 785, 788 (1981) (the statutory scheme of c. 138 is designed to give the commission authority

---

[7]Title 204 Code Mass. Regs. § 2.05(2) states: "No licensee for any sale of alcoholic beverages shall permit any disorder, disturbance or illegality of any kind to take place in or on the licensed premises. The licensee shall be responsible therefor, whether present or not."

necessary to serve the public need and to protect the common good, and the purpose of its powers, including the authority to revoke and suspend licenses, is "not retribution but the protection of the public").

Just as we have rejected any implication of the liability of a tavern derived from G. L. c. 138, § 69, see *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327 (1982) (tavern's liability for serving an intoxicated patron "grounded on the common law doctrine of negligence and is not directly imposed by [§ 69]"), we now reject the implication of civil liability of a named manager from the provisions of § 26 appearing in the same chapter. In *Ludlow Educ. Assn.* v. *Ludlow*, 31 Mass. App. Ct. 110, 118-120 (1991), we said that a judicially drawn implication of a private right of action from a statute that omits such a remedy occurs where the statute evidences a special legislative concern for an identifiable interest of a group of which the plaintiff is a member, and not merely a concern for the public generally, and if the injury suffered falls within the area of concern. Section 26 does not disclose any special legislative concern for injured passengers of motor vehicles driven by intoxicated patrons of licensed taverns. The liability of a manager, like the liability of a tavern, is appropriately left to the common law doctrine of negligence. See *O'Gorman* v. *Antonio Rubinaccio & Sons, Inc.*, 408 Mass. 758, 760-763 (1990) (tavern owner not liable for injuries caused by intoxicated tavern patron where owner did not serve any alcoholic beverage to the patron and "did not create or contribute to the danger" created by the patron). See also *Addis* v. *Steele*, 38 Mass. App. Ct. 433, 439-440 (1995) (corporate officers not liable merely by reason of their positions without evidence that the officers participated in the acts causing injury to the plaintiffs).

There is no evidence in this case that the owners and managers of the tavern created or contributed to the prohibited intoxication of Graves. Indeed, there was no evidence that either of the managers was present at the tavern the night of the accident. The plaintiffs make no argument to the contrary.

Finally, the regulation cited by the plaintiffs imposes responsibility for illegal conduct only on the licensee (Herzig-Baker Corporation), not the person named as manager, nor his comanager.

*Disregarding the corporate form.* "The rule in the Com-

monwealth is that corporations are to be regarded as separate entities where there is no compelling reason of equity 'to look beyond the corporate form for the purpose of defeating fraud or wrong, or for the remedying of injuries.' *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 618 (1968)." *Gurry* v. *Cumberland Farms, Inc.*, 406 Mass. 615, 625-626 (1990). Here, the judge granted the defendants' motion for summary judgment on count I. Thus, all the facts favorable to the plaintiffs are taken to be true, and the plaintiffs are to have the benefit of any favorable inferences. See *O'Gorman* v. *Antonio Rubinaccio & Sons, Inc.*, 408 Mass. at 759.

The plaintiffs point to the following facts: (i) the defendants admit that they were the sole owners of the corporation and the real property leased by the corporation; (ii) that the defendants controlled the daily operations of the tavern; (iii) that Baker admitted in his supplemental affidavit that "the capitalization of the business was minimal" when the corporation was first organized in 1977[8]; (iv) that the corporation had been operating at a loss since 1988[9]; (v) that the corporation paid rent to the defendants while all expenses of maintaining the real property were paid by the corporation; (vi) that the corporation paid salaries to the defendants[10]; and finally, (vii) that Baker admitted in his supplemental affidavit that the corporation allowed its "liquor liability policy . . . [to] lapse because we could not afford it."

There is nothing of substance presented by the plaintiffs from which an inference may be drawn that the corporation paid excessive rent or excessive salaries to the defendants, or that the defendants failed to maintain corporate books and records, or failed to file the necessary corporate Federal and State tax returns, or that the corporation was unable to pay its debts as they matured, or that the corporation was a "sham," as alleged in count I. Nor do the plaintiffs bring to our attention any decisions that suggest any different conclusions. See generally *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 732-738 (1991).

---

[8]The Federal tax return of the corporation as of September 30, 1990, shows a book net worth of $27,058, of which $10,000 was capital stock and the balance, retained earnings.

[9]The Federal tax returns of the corporation for its fiscal years ending September 30, 1988, 1989, and 1990, show operating losses of $2,572, $5,229 and $11,152, respectively.

[10]The Federal tax returns reveal that "compensation of officers" was $12,075 in 1988, $12,548 in 1989, and $10,670 in 1990.

Rather, the nub of the matter, as the plaintiffs emphasize in their brief,[11] is the absence of a liquor liability insurance policy covering the tavern, with the resulting inability of the corporation to meet the substantial judgment ($2,475,000) rendered against it.

Without doubt, the defendants' decision not to maintain a liability policy protecting those members of the public injured as a result of the prohibited service of intoxicating beverages to an intoxicated person is troubling. In *Adamian* v. *Three Sons, Inc.*, 353 Mass. 498, 501 (1968), the court wrote that service of alcoholic beverages to an intoxicated person creates the foreseeable risk of serious injury to human life "due to drunken driving on the highways." When, in the face of the obvious risk identified in *Adamian*, the owners and comanagers of a tavern elect to face the consequences if harm occurs, confident that personal liability will not attach to those consequences, then it may seem unjust to permit the shifting of the burden of injury from those who set in motion the creation of the risk to those who were unaware that they fell within the scope of that risk.

Nevertheless, the absence of insurance, while possibly relevant to the factor of undercapitalization, see *Radaszewski* v. *Telecom Corp.*, 981 F.2d 305, 310 (8th Cir. 1992), has not, to our knowledge[12] (nor, it seems, to the knowledge of the plaintiffs, see note 11, *supra*) been held sufficient to bypass the

[11]In their reply brief, the plaintiffs, without citation to any authority, argue that the corporation "had a duty either to maintain adequate capitalization or in the alternative to maintain liquor liability insurance." In this case, the corporation — a neighborhood tavern — would have had to maintain an unlikely net worth in the range of three million dollars to cover the judgment rendered against the corporation, and continue in business. Thus the question comes down to the issue of the absence of insurance coverage.

[12]In *Eastridge Dev. Co.* v. *Halpert Assocs., Inc.*, 853 F.2d 772 (10th Cir. 1988), the court held that the parent, Professional Services Industries, Inc., was the "alter ego" of its subsidiary, Halpert Associates, Inc. There was evidence that Halpert had allowed its professional liability insurance to lapse, that Halpert was "grossly undercapitalized," and that within one month after suit was filed, Professional Services had withdrawn its prior commitment to make a $300,000 contribution to the capital of Halpert, and had planned to cause Halpert to file bankruptcy. Subsequently, Professional Services closed down Halpert and collected all accounts receivable for its own account. When bankruptcy was filed, the only creditors were Professional Services and the contingent claim of the plaintiff. The *Eastridge Development* case provides no assistance to the plaintiffs in this case.

corporate form. Contrast *LaClair* v. *Silberline Mfg. Co., Inc.*, 379 Mass. 21, 26-29 (1979) (in an action against a corporate president for failure to carry or provide worker's compensation insurance, depriving the plaintiff of widow's benefits under G. L. c. 152, the court held that the disregard of the statutory duty to purchase such insurance or certify his firm as a self-insurer may support a finding of negligence on his part). No such statutory duty is present in this case, and if such a duty is to be imposed, it is for the Legislature, not the courts, to see to the imposition of that duty.[13]

We comment briefly on the remaining arguments.

1. There is no merit to the claim regarding count III — that the defendants are personally liable because there was a "joint venture" among the defendants and the corporation, and the plaintiffs cite no authority in support of the proposition.

2. Regarding the verdicts under counts II and V, the plaintiffs argue that the judge erred in not allowing them to introduce evidence that the bartender served excessive amounts of alcohol to several patrons on the night of the accident. The admissibility of this evidence, and whether the evidence was so inflammatory as to outweigh its probative value, are questions addressed to the sound discretion of the trial judge. *Commonwealth* v. *Booker*, 386 Mass. 466, 469 (1982). Accord *Commonwealth* v. *Dunn*, 407 Mass. 798, 807 (1990). The standard of review is the presence of "palpable error," *Commonwealth* v. *Harvey*, 397 Mass. 351, 359 (1986), and we see no such error here.

3. The plaintiffs argue, regarding the verdicts on counts II and V, that the judge erred in refusing to allow the plaintiffs' expert to testify as to industry standards in the bar and tav-

---

[13]See, as to action taken by the Legislature in 1985, St. 1985, c. 223, the surviving portions of which are codified at G. L. c. 175, § 112A, and G. L. c. 231, § 60J (requiring the plaintiff to file an affidavit containing facts supporting any claim against a tavern for negligence in the service of alcoholic beverages), the latter provision being designed to "promote the availability of [liquor] liability insurance . . . [by reducing] the incidence of frivolous claims. . . ." *Croteau* v. *Swansea Lounge, Inc.*, 402 Mass. 419, 422 (1988). Contrast the statutory provisions for compulsory motor vehicle liability insurance appearing in G. L. c. 175, §§ 113A et seq.

ern business. The plaintiffs were given wide latitude in examining their expert. There was no error.

4. The plaintiffs also argue, regarding the verdicts on counts II and V, that the judge erred in removing Beam's medical blood alcohol level from her medical record. The plaintiffs offered no evidence that Beam, while intoxicated, was served at the tavern. There was no error in the exclusion of the evidence.

*Judgments affirmed.*