**WINE AND SPIRITS WHOLESALERS OF MASSACHUSETTS, INC.,**
**Plaintiff,**

v.

**NET CONTENTS, INC. d/b/a Virtual Vineyards, and the Federal Express Corporation, Defendants.**

No. 97–12804–JLT.

United States District Court,
D. Massachusetts.

July 23, 1998.

Louis Cassis, Quincy, MA, for Wine and Spirts Wholesalers of Massachusetts, Inc.

Laurie M. Ruskin, Palmer & Dodge, Steven W. Kasten, McDermott, Will & Emery, Kenneth A. Sweder, Stroock, Stroock & Lavan, Ariel D. Cudkowicz, Stroock, Stroock &

Lavan L.L.P., Boston, MA, for Net Contents, Inc.

Anthony A. Bongiorno, McDermott, Will & Emory, Steven W. Kasten, McDermott, Will & Emory, Kenneth A. Sweder, Stroock, Stroock & Lavan, Boston, MA, for Federal Express Corp. Long Term Disability Plan.

## MEMORANDUM

TAURO, Chief Judge.

The plaintiff in this case is a corporation whose shareholders included ten Massachusetts wine and spirits wholesalers. Defendant Net Contents, Inc., doing business as Virtual Vineyards ("Virtual Vineyards"), is a purveyor of wine and spirits, having a principal place of business in Palo Alto, California. Defendant Federal Express ("FedEx") is a foreign corporation registered with the Secretary of State to do business in Massachusetts.

The plaintiff alleges that Virtual Vineyards, through its Internet Web Site, sells and ships alcoholic beverages to consumers in Massachusetts in violation of state law, thereby tortiously interfering with the plaintiff's in-state business relations with customers.

## I.

### BACKGROUND

The market for alcoholic beverages is highly regulated under Massachusetts law. Consumers may purchase alcoholic beverages to be drunk off the premises only from duly licensed retailers. M.G.L. c. 138, § 15 (1991). Package stores so licensed under the statute may, in turn, purchase alcoholic beverages for resale from only those wholesalers who are duly licensed pursuant to Section 18 of the same chapter. M.G.L. c. 138, § 18 (1991). Moreover, wholesalers licensed under Section 18 may sell alcoholic beverages only to licensed retailers, and may purchase such beverages only from manufacturers who are licensed under the statute or who are holders of a Certificate of Compliance issued by the Alcoholic Beverage Control Commission. Id. This certificate allows out-of-state licensees to export alcoholic beverages to Massachusetts and sell such beverages to

duly licensed wholesalers. M.G.L. c. 138, § 18B (1991). Under this tight regulatory scheme, consumers cannot purchase alcoholic beverages directly from wholesalers or manufacturers and, in turn, wholesalers and manufacturers cannot sell alcoholic beverages directly to consumers.

The plaintiff in this case claims that Virtual Vineyards holds no such license or certificate that would allow it to lawfully sell, store, transport, and/or export alcoholic beverages into or within the Commonwealth. Accordingly, the plaintiff alleges that Virtual Vineyards has illegally sold alcoholic beverages in Massachusetts and, that these sales, because they have induced present and prospective customers to withhold their patronage from the plaintiff, constitute intentional interference with the plaintiff's business relations.

In addition to damages and costs, the plaintiff seeks an injunction preventing Defendants from filling or delivering any order for alcoholic beverages received and/or ordered by customers for delivery to individuals in Massachusetts.

At issue is the defendants' motions to dismiss.

## II.

### ANALYSIS

#### A. Dismissal Standard

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is to "test the formality of the statement of the claim for relief." *International Bank of Miami v. Banco de Economias y Prestamos*, 55 F.R.D. 180, 185 (D.P.R.1972). A defendant who presents a motion to dismiss admits, for purposes of the motion, all the material allegations of the complaint but "does not admit any conclusion of law or unwarranted deductions of fact made therefrom." *Id.* In deciding such a motion, the court must, therefore, view all material allegations in the light most favorable to the plaintiff and resolve all doubts in its favor. *Dunn v. Gazzola*, 216 F.2d 709 (1st Cir.1954). The court should not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. *Defendant Virtual Vineyard's Motion to Dismiss*

■ The plaintiff alleges tortious interference with business relations as a result of Virtual Vineyard's sale and import of wine, allegedly in violation of M.G.L. c. 138 (1991) ("Chapter 138"). Although it is clear that no private right of action for damages exists under Chapter 138, *Gottlin v. Herzig,* 40 Mass.App.Ct. 163, 166–67, 662 N.E.2d 706, 708–09 (1981)(holding that no private right of action may be implied under Chapter 138), a claim for equitable relief is not necessarily foreclosed. *See New York, N.H. & H.R. Co. v. Deister,* 253 Mass. 178, 181, 148 N.E. 590, 591 (1925)(stating that even though a statute provides no private right of action, the general principles of equity jurisprudence may allow plaintiff to sue for an injunction). Here, the plaintiff seeks equitable relief.

It is, however, a well-settled rule in Massachusetts that a statute enacted for the benefit and protection of the public at large, which authorizes criminal penalties for its violation, cannot be enforced in equity absent express statutory authority to do so. *Graham v. McGrail,* 370 Mass. 133, 136, 345 N.E.2d 888, 891 (1976). In establishing this rule, the Supreme Judicial Court reasoned that allowing equitable claims for alleged violations of a criminal statute to go forward, effectively "deprives the defendant of his jury trial." *Commonwealth v. Stratton Fin. Co.,* 310 Mass. 469, 474, 38 N.E.2d 640, 643 (1941). Such "criminal equity," explained the court, "substitutes for the definite penalties fixed by the Legislature whatever punishment for contempt a particular judge may see fit to exact... [and] it may result, or induce the public to believe that it results, in the arbitrary exercise of power and in 'government by injunction.'" *Id.,* 38 N.E.2d at 643. As a consequence, the Supreme Judicial Court strongly admonished courts to engage in solemn deliberations before extending "the use of the injunction into the criminal field

without express legislative sanction." *Id.,* 38 N.E.2d at 643.

This court's appreciation of Chapter 138's provisions, which authorize criminal penalties, requires just such deliberation. As was pointed out by the Supreme Judicial Court, Chapter 138 confers no equitable enforcement authority. Moreover, an ordinance authorized by Chapter 138 cannot be equitably enforced in a civil suit. *Revere v. Aucella,* 369 Mass. 138, 146–47, 338 N.E.2d 816, 821 (1975). In reaching its holding, the Supreme Judicial Court relied on its earlier ruling in *Massachusetts Society of Optometrists v. Waddick,* 340 Mass. 581, 584, 165 N.E.2d 394, 396 (1960), where it held that a society of licensed optometrists were not entitled to enjoin a person practicing optometry without a license. *Id.,* 165 N.E.2d at 396.

The plaintiff in *Waddick,* like the plaintiff in the instant case, was a trade association seeking an injunction against the defendant on the grounds that the defendant's provision of optometry services without a license constituted a public nuisance and interfered with the plaintiff's advantageous business relations. *Id.* at 582, 165 N.E.2d at 395. Finding that the optometry licensing statute was not enacted to protect duly licensed optometrists from competition, but rather to promote public health by shielding the public from improper treatment, the court ruled that the provisions of the statute "do not suggest a legislative purpose to confer on ... [licensees a] right to restrain the unauthorized practice by others." *Id.* at 584, 165 N.E.2d at 396.

■ This court considers the Supreme Judicial Court's holding in *Waddick* to be persuasive precedent with respect to the instant case. Chapter 138, like the optometry licensing statute, was enacted "with a view only to serve the public need and in such a manner as to protect the common good." *See* M.G.L. c. 138, § 23 (1991). Moreover, the statute confers upon the Alcoholic Beverages Control Commission the express power to enforce its provisions through the assessment of criminal penalties in the form of fines and/or imprisonment. M.G.L. c. 138 §§ 2, 22 & 62 (1991). The statute does not confer upon the plaintiff, either expressly or implic-

itly, any right to restrain Virtual Vineyard's activities, even if they violate its provisions. Nor does Chapter 138 evidence any special legislative concern for protecting duly licensed wholesalers from competition. For all of these reasons, Defendant Virtual Vineyard's Motion to Dismiss is ALLOWED.

### C. *Defendant FedEx's Motion to Dismiss*

Defendant FedEx argues that the Airline Deregulation Act of 1978 ("ADA") preempts the plaintiff's Chapter 138–based claim of tortious interference with business relations. That Act provides, in relevant part, that

> [N]o state . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier.

49 U.S.C.App. § 1305(a)(1)(1994)(revised without substantive change, 49 U.S.C. § 41713(b)(1)). In interpreting this provision, the Supreme Court has held that the words "relating to" are to be read broadly to mean "having a connection with or reference to." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Accordingly, the plaintiff's Chapter 138–based claims are preempted if the enforcement of that statute through a finding of tortious interference has a "forbidden significant effect" on rates, routes, or services. *Chukwu v. Board of Directors British Airways,* 889 F.Supp. 12, 13 (D.Mass.1995)(quoting *Hodges v. Delta Airlines,* 44 F.3d 334, 336 (5th Cir.1995)).

■ In employing this standard, the Supreme Court has consistently found that the ADA preempts all tort claims relating to airline prices, routes, or services, except for those that fall into the realm of personal injury. *See, e.g., American Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995)(holding that the ADA preempts economic tort claims). Furthermore, Judge Lasker from this district court has found that the ADA preempts certain free-standing tort claims as they relate to airline services. In particular, Judge Lasker found that the ADA preempted a plaintiff's claims of slander and intentional infliction of emotional distress based on the airline's refusal to allow him to board his scheduled flight. The court reasoned that this refusal was "uniquely within the service provided and controlled by air carriers," *id.* at 14, and that judicial maintenance of the claims arising therefrom would, as a result, interfere with the airline industry's self-regulation.

■ Similarly, the intentional interference claim that derives from a purported violation of Chapter 138's licensing provisions for liquor transporters is related to FedEx's air transport services. Indeed, this claim arises directly from the act of, and the method employed in, providing these services. As such, this court's enforcement of Chapter 138's provisions through the maintenance of Plaintiff's intentional interference claim would affect airline services in such a way as to interfere with the industry's attempts to regulate itself through the ADA. Consequently, Plaintiff's Chapter 138–based tort claims are preempted by the ADA and are hereby dismissed.

### III.

### *CONCLUSION*

For the foregone reasons, both Defendant Virtual Vineyard's and Defendant FedEx's motions to dismiss are hereby ALLOWED.