Wilkins, Douglas H., J.
As a result of an alleged beating at Club Red 1888 (“Club Red”) on the evening of April 2, 2005, the plaintiff Randy Martineau (“Mar-tineau”) brought claims against five defendants. The Second Amended Complaint alleged that defendant, Jarrett J. Watkins (“Watkins”), a Worcester police officer on paid detail at Club Red, was the one who beat him. It also asserts claims against the owner of Club Red, DV-8 Production, Inc. d/b/a/ Club Red 1888 (“DV-8”); DV-8’s sole officer and director, Daniel Saleba (“Daniel”); the landlord, Balbek Development, LLC (“Balbek”); and Balbek’s sole member, Paul Saleba (“Paul”). All defendants except DV-8 have filed motions for summary judgment, which Martineau has opposed. After hearing on December 22, 2011, attended by all parties, the Defendant Jarrett J. Watkins’ Motion for Summary Judgment (“Watkins Motion”) is DENIED. The Motions of Balbek, Paul, and Daniel are ALLOWED.[2]
BACKGROUND
The undisputed facts, supported in the Rule 9A(b)(5) statement and not genuinely contested by Martineau, along with the reasonable inferences drawn in favor of Martineau as opposing party are as follows.
DV-8 owned and operated a bar and nightclub known as Club Red at 41 Pleasant Street, Worcester. Daniel Saleba is the owner and managing member of Club Red. Balbek owns the real estate at 41 Pleasant Street. Paul is the manager, sole member, and owner of Balbek.[3] Paul has been to the Club on numerous occasions.
Balbek leased to DV-8 the space in which Club Red operated pursuant to a written lease. Under the terms of the lease between DV-8 and Balbek, the landlord maintained control over the uses of the unit and all common areas in and around the building; had con *394 tractual authority to require its tenant to desist from nuisances, disturbances, violations of law, objectionable noise, and breaches of other terms of the lease; and required notice regarding maintenance and cancellation of insurance.
Watkins is a City of Worcester Police Officer who, for purposes of summary judgment, perpetrated the attack on Martineau on April 2, 2005. At the time, he was working an off-duty paid detail assignment at Club Red. For those purposes, it is also taken as fact that Martineau was not involved in any physical or verbal altercation whatsoever.[4] While wearing his regulation police uniform, Watkins struck Martineau with an expandable service baton, known as a “Monad-nock” baton, twice on the leg and thigh. Watkins initially denied striking the plaintiff, but later admitted doing so and cannot explain the strike marks on Martineau from his Monadnock service baton, which is classified as a deadly weapon. The blows caused injuries to the plaintiffs kidneys, head, upper torso, neck, forearms, and other parts of his body, including broken bones in the plaintiffs head and neck area. Watkins did not file an incident report for the fight that is the subject of this case.
Watkins periodically worked off-duty assignments at Club Red during 2005 and was working such a detail at the time of the incident. He did details at Club Red approximately once a week since 2003. His role was to serve primarily as a buffer for any type of civil disorder or other situation involving safety concerns. He interacted with the Club’s “bounce” staff. Worcester Police policy requires officers on paid details to “stay at their assigned post for the duration of the off-duty assignment unless authorized to leave by the vendor or a police supervisor.” The Police department’s policy also requires officers working off-duty assignments to submit a written report concerning any injury, accident or incident that occurs during the period of the off-duty assignment no later than the completion of the off-duty assignment.
On the night in question, Watkins did the detail by himself, without other officers. He claimed that he did not know who owned the buildings at 41 to 47 Pleasant Street, Worcester. Martineau challenges the credibility of this statement and, alternatively, argues that the statement is evidence that the Club failed to supervise Watkins’ activities at the Club. Watkins received no security training from Paul Saleba; he does not even know Paul. Balbek never paid Watkins.
It was not uncommon for fights to happen at Club Red at the time in question. There was no set pattern to the fighting, which could occur twice per week, but could also go one to two months without happening. Paul testified that other than the incident that is the subject of this lawsuit, he did not hear of or have reason to know of any fights or altercations that occurred at Club Red. Paul also testified that he has no knowledge of any newspaper article concerning altercations that occurred at Club Red.
DV-8 maintained corporate records, and filed annual reports and annual tax returns. On April 2, 2005, it was not insolvent. It had allowed its insurance to lapse and paid its rent irregularly. Daniel paid himself a salary, but did not siphon away corporate assets. Nor did he use the corporation to promote fraud. Paul held a $130,000 promissory note against the assets of DV-8, which was discharged when DV-8 filed for bankruptcy.
DISCUSSION
I.
On summary judgment, the moving party has the burden to demonstrate that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Foley v. Boston Hous. Auth., 407 Mass. 640, 643 (1990). The movant may meet this burden by showing that the plaintiff has no reasonable expectation of producing evidence on a necessary element of her case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving parly meets the burden, the opposing party must advance specific facts that establish a genuine dispute of material fact. Id.
In ruling on a summary judgment motion “the existence of disputed facts is consequential only if those facts have a material bearing on the disposition of the case . . . The substantive law will identify whether a fact, in the context of the case, is material.” Hogan v. Riemer, 35 Mass.App.Ct. 360, 364 (1993) (citations omitted). A dispute is “genuine” if the evidence would permit a reasonable fact finder to resolve the point in favor of the opposing party. See Mulvihill v. The Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).
II.

A. Watkins

While the original complaint sounded in negligence, it alleged ample facts to state a claim against Watkins for assault and battery as well, as this Court ruled on December 9, 2009. Martineau v. DV-8 Productions, 2009 WL 200601768 (Super.Ct.) (Tucker, J.) [26 Mass. L. Rptr. 374). The rules of pleading do not require the complaint to cite specific legal theories, as long as it alleges the facts plausibly suggesting entitlement to relief upon some viable theory. See generally Pontremoli v. Spaulding Rehabilitation Hosp., 51 Mass.App.Ct. 622, 626 n.4 (2001), quoting Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979) (“ ‘[A] complaint is not subject to dismissal if it would support relief on any theory of law’ ” (emphasis in original)). Should any doubt remain, the Court has allowed the plaintiffs motion to clarify the complaint, which makes clear Martineau’s intent to assert assault and battery claims. The City’s attack upon the complaint’s failure to plead such a theory is outside the scope of summary judgment in any event. See *395 Smith v. Massimiano, 414 Mass. 81, 85 (1993) (Summary judgment motion concedes the validity of the complaint).
The facts, construed in plaintiffs favor, easily support a claim of assault and battery by Watkins upon Martineau. Sovereign immunity does not protect public employees from personal liability for their intentional torts, including assault and battery. G.L.c. 258, §§2, 10(c); Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 286 n.9 (1985). If one draws all inferences in favor of the plaintiff, Watkins would be liable as an individual for the alleged assault and battery upon Martineau.
To the extent that Martineau presses his negligence claim against Watkins, he has also shown that genuine issues of material fact exist on Watkins’ defense of immunity as a public employee under G.L.c. 258, §2. That immunity is only available if Watkins was acting within his scope of duty as a Worcester Police Officer at the time of the alleged incident. Whether a public employee acted within his scope of employment for purposes of G.L.c. 258, §2, depends on whether he performed the act in question in furtherance of the employer’s work. Relevant factors include whether conduct (1) is the kind the employee is hired to perform, (2) occurs within authorized time and space limits, and (3) is motivated in part by a desire to serve the employer. See Clickner v. Lowell, 422 Mass. 539, 542 (1996). Here, Watkins was in uniform, was required to conform to the City’s rules and regulations for off-duty paid detail and was keeping order, consistent with his duties to the City. However, he was paid by a private party, was not working on City time, and was not specifically assigned to the job by his employer.
A case decided before the enactment of G.L.c. 258 is instructive. In Davis v. Delrosso, 371 Mass. 768, 771 (1977), the Court held that a paid detail by a police officer (by coincidence, also a Worcester officer) raised a jury question regarding whether the officer was a servant or employee of the bar, because:
[T]he jury were entitled to attach significance to the circumstances, among others, that [the officer’s] task (as the jury might believe) was similar to that which has been customarily confided to the bartender or “bouncer”; that his work was to be performed on the principal’s premises though it might spill over to the sidewalk; and that he was engaged alone and not, as in some decided cases, in company with other policemen under the command of a superior officer. [Citations omitted.] The jury could find that [the officer] was “acting not as [a] public [officer] in a public place but as [an employee] of the defendant for its private purposes on its private premises.” [Citation omitted.]
The jury could draw the same conclusions here, which would negate Watkins’ claim of immunity as a public employee.
B. Claims against Balbek

1) Vicarious Liability

Martineau seeks to hold Balbek vicariously liable for Watkins’ April 2, 2005 alleged tortious conduct. The Delrosso case, just cited, lays out the argument for proceeding against DV-8, as the owner and operator of the bar arguably employing Watkins, but DV-8 is in bankruptcy and cannot be sued in this Court. Martineau therefore seeks to extend his theory to hold the landowner, not the bar owner, liable.
To prevail on a vicarious liability theory, Martineau must show that Balbek employed Watkins at the time of the incident, and that Watkins’ conduct was within the scope of his employment. See Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 322 (2002) (vicarious liability for negligence); Worcester Ins. Co. v. Fells Acres Day Sch., Inc., 408 Mass. 393, 404 (1990) (vicarious liability for intentional torts). “The right to control an agent’s activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent’s principal.” See Kelley v. Rossi, 395 Mass. 659, 661 (1985).
Nothing in the record warrants a finding that Balbek participated in Club Red’s hiring or management of any employees, independent contractors, or agents; that Balbek paid Watkins; or that Balbek controlled any aspect of Watkins’ work at Club Red. On this record a jury has no factual basis to find Balbek vicariously liable for Watkins’ alleged tortious conduct.

2) Negligent Supervision

Martineau also argues that Balbek is liable for negligent supervision of Watkins. “As a general principle of tort law, ‘there is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another.’ ” Lev v. Beverly Enterprises-Mass., Inc., 457 Mass. 234, 242 (2010).[5] Duties capable of giving rise to liability for negligence exist only in narrowly prescribed circumstances, where a special relationship exists between the person posing the risk and the one who can prevent the harm." Id. The circumstances here are unusual, involving an alleged assault by the very person whom Club Red paid to provide security. The question is whether these facts fall within the duty owed by a commercial landlord (Balbek) to a person lawfully on its leased premises (Martineau), to prevent reasonably foreseeable physical harm caused by a third party whom the lessee employed to provide security.
The undisputed facts in this case demonstrate that Balbek’s duty did not extend that far. Commercial landlords do have “a duty to take reasonable precautions to protect persons lawfully in common areas of the rental property against reasonably foreseeable risks.” Whittaker v. Saraceno, 418 Mass. 196, 197-98 (1994).[6] In Whittaker, the SJC explained that a commercial landlord’s liability for negligent supervision *396 hinges on whether an attack is reasonably foreseeable. Id. at 198-99 & n.3. In defining reasonable foreseeability, that court went on to examine all the circumstances surrounding the case as a limit on the scope of a commercial landlord’s duty of care. Id. at 199.[7] It held the commercial landowner defendant had no duty to provide the plaintiff protection against rape by a third party in the garage of its office building, where it was unaware of prior property crimes or any concern to public safety on its premises. Id. at 199-201. See Luisi, 50 Mass.App.Ct. at 578-79 (neither supermarket, nor its commercial landlord, had a duty to prevent a mentally ill customer from attacking another customer, where these defendants had no warning about the potential threat and the presence of a security guard would not have prevented the attack).[8]
Here, Balbek’s duty of care to those lawfully in the common areas of its rented premises did not extend to preventing physical injury to DV-8’s patrons from DV-8’s paid detail officer under the circumstances. It appears that the assault occurred primarily, if not exclusively, in the leased portion of the building. Martineau presented no evidence that Balbek had notice of any violent incidents involving Watkins or any other person hired by Club Red to provide security. See Foley, 407 Mass. at 644-46 (upholding summary judgment for the BHA on the question of duly because an attack by a fellow employee was not foreseeable in the absence of record evidence of “threats by employees, or a pattern of incidents involving employees, that reasonably would put the BHA on notice that Foley could be the target of an attack by an employee” or by the individual assailant in particular). There is no evidence that additional security measures — which would amount to policing the police — were required to prevent an attack, where an off-duty police officer was already on the premises. Without a reason to know of the threat Watkins posed and an ability to employ security measures capable of preventing such harm, Balbek’s duty of care did not extend to preventing Watkins’ alleged attack on Martineau on April 2, 2005.
It is true that Martineau has presented evidence indicating that bar fights had occurred in the common areas of DV-8. “Prior criminal acts are simply one factor among others that establish the foreseeability of the act of the third party.” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). More is required:
The possibility of criminal conduct occurring is present in almost every aspect of daily life. In that sense the possibility of a violent attack is always able to be foreseen. However, society should not place the burden of all harm caused by random violent criminal conduct on the owner of the property where the harmful act occurred, without proof that the landowner knew or had reason to know of a threat to the safety of persons lawfully on the premises against which the landowner could have taken reasonable preventive steps.
Whittaker, 418 Mass. at 200. On the undisputed facts, Balbek had no knowledge or reason to know of these prior incidents. Balbek’s president, Paul, first became aware of physical altercations at DV-8 by discussing this lawsuit with Daniel, DV-8’s manager. Even if he had prior knowledge of those events, he would not have been on notice of a need to supervise the very officer that Club Red hired to provide security.

3) Negligence Per Se

Balbek’s alleged violations of G.L.c. 139, §§19 and 20 do not constitute negligence per se. Section 19 permits a landlord to void the lease of a tenant engaged in the illegal sale of alcohol on its rented premises. Section 20 punishes a landlord that knowingly rents its premises to, and after receiving notice, fails to take reasonable measures to eject a tenant engaged in, among other things, the illegal sale of alcohol on the rented premises. In this case, Martineau alleged that Club Red served alcohol to an underage drinker in violation of G.L.c. 138, §34. An assault by a police officer upon an adult patron is hardly a foreseeable consequence of such a violation, but there are other problems with this theoiy as well.
Violations of the liquor laws do not provide an independent basis for negligence liability. See Zinck v. Gateway, 72 Mass.App.Ct. 571, 576 & n.8 (2008) (violation of G.L.c. 138, §34 is not prima facie evidence of negligence, but can be used to support a finding of negligence), citing Bennett v. Eagle Brook Country Store, Inc., 408 Mass. 355, 358 (1990); Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 275 (1970). A plaintiff must prove each element of negligence separately to recover for negligence based on a violation of liquor laws. See Zinck, 72 Mass.App.Ct. at 576. The plaintiff has cited no cases, and the court has not found any to support the proposition that a landlord’s violation of a nuisance statute establishes negligence per se. See G.L.c. 139, §20 (establishing landlord’s duty to take reasonable steps to eject tenants upon notice of unlawful sale of alcohol on the rented premises).
Even if violation of §20 were evidence of negligence, Martineau must show that Balbek knew that Club Red used its rented premises for unlawful sale of alcohol or that it received notice of the same and failed to take reasonable steps to eject Club Red. See G.L.c. 139, §20 (“Whoever knowingly lets premises owned by him, or under his control, for the purposes of. . . illegal keeping or sale of alcoholic beverages ... or knowingly permits such premises, while under his control, to be used for such purposes, or after due notice of any such use omits to take all reasonable measures to eject therefrom the persons occupying the same as soon as it can lawfully be done . . .”). Martineau has failed to present any proof that Balbek knew or had notice that Club Red had served alcohol to minors such as the minor allegedly involved here.
*397 4. Joint Venture
Martineau cannot prevail on the theory that Balbek is jointly and severally liable with DV-8 for the April 2, 2005 incident because it was engaged in a joint venture with DV-8 to operate Club Red. True, if a corporate entity shows an intent to associate with another corporate entity as ajoint venture, the entities can be considered a single employer. See Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 622-24 (1990) (agreement to share profits and losses, contribution of money and assets to a common undertaking; joint property interest in the subject matter of the venture, and right to participate in control of the venture suggests existence of joint venture). There is no proof that Balbek intended to associate with DV-8 in this manner. The two companies acted at all times as separate entities, as their principals intended. Balbek is therefore entitled to summary judgment on Martineau’s negligence claim based on joint venture.
C. Claims against the Salebas Individually

a. Daniel Saleba (Piercing the Corporate Veil)

Martineau brings negligence and assault and bat-texy claims against Daniel Saleba. There is no evidence to suggest that Daniel was involved personally in the incident between Watkins and Martineau. See Addis v. Steele, 38 Mass.App.Ct. 433, 439-40 (1995) (corporate officers not liable based on their positions in absence of evidence that they participated in the conduct that harmed plaintiff). The undisputed facts do not even suggest that Daniel was present at Club Red on the night at issue.[9]
Martineau’s principal argument against Daniel depends upon piercing DV-8’s corporate veil. Daniel seeks summary judgment on this claim, contending that the undisputed facts demonstrate that Martineau cannot pierce the corporate veil of DV-8, a Massachusetts corporation.
Generally a plaintiff may pierce the corporate veil upon proof of “confused intermingling of corporate activity disregarding formal corporate separation.” Commonwealth v. Springfield Terminal Ry., 80 Mass.App.Ct. 22, 37 (2011), citing My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968). The Supreme Judicial Court has articulated the applicable factors in Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 557 (2000), and Commonwealth v. Beneficial Fin. Co., 360 Mass. 188, 290-91 (1971). See Springfield Terminal Ry., 80 Mass.App.Ct. at 38. They include:
(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation’s funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.
M.C.K., Inc., 432 Mass. at 555 & n.19.
On the undisputed facts, these factors cannot support piercing DV-8’s corporate veil. Martineau produced no evidence of any intermingling between Daniel’s personal and DV-8’s business activities, or of fraudulent conduct. On the contrary, the record reveals that DV-8 was properly capitalized at the time of Martineau’s April 2, 2005 incident, and that it had observed corporate formalities, such as filing of annual tax returns and annual reports. Martineau cannot pierce DV-8’s corporate veil to reach Daniel’s personal assets.[10]

b. Daniel and Paul (Joint Venture with DV-8)

Martineau cannot prevail on the theory that Daniel and Paul may be jointly and severally liable with DV-8 for the April 2, 2005 incident because they were participating in a joint venture with DV-8.[11] See Gottlin v. Herzig, 40 Mass.App.Ct. 163, 170 (1996) (suggesting that no legal basis exists for holding that individuals and corporate entities can engage in ajoint venture). Investing in, managing, and engaging in transactions with a company like DV-8 is not the same as ajoint venture.
ORDER
For the above reasons, the Defendant Watkins’s Motion for Summary Judgment is DENIED. The Defendants Balbek’s, Paul Saleba’s, and Daniel Saleba’s Motions for Summary Judgment are ALLOWED. The Plaintiffs Cross Motion for Summary Judgment is DENIED.

Martineau, in his opposition to the defendant’s motions, seeks summary judgment on all the claims stated in the Second Amended Complaint. Martineau also seeks to strike the defendants’ responses to paragraphs 2, 3, 4, 5, 7, 8, 9, and 10 of the Consolidated Statement of Undisputed Facts. These requests are DENIED. The Plaintiffs Motion to Clarify the Second Amended Complaint is ALLOWED.

Martineau purports to deny this fact as stated, but his page-long response disagrees not with the facts, but only with matters of characterization and emphasis. This response— and many like it — violates the letter and spirit of Superior Court Rule 9A(b)(5) and does not advance Martineau’s case, even as it adds to the Court’s work and dilutes any focus the opposition may have had. A disagreement with characterizations, rhetoric or emphasis does not create a genuine dispute of material fact. For a description of how Rule 9A(b)(5) is supposed to work, and how that rule can be utilized most effectively by counsel in the interests of their clients, see Fabricant, J., “Just the Facts,” Boston Bar Journal (Summer 2011).

Martineau claims that Balbek is liable for violation of various statutes because Club Red served alcohol to Anah DeAngelis, who was under the age of twenty-one, and that his beating was precipitated by the fact that Anah DeAngelis became intoxicated and caused an altercation between two *398 other patrons at the club. Martineau contends that he was an innocent bystander, and that Watkins subdued him along with the parties involved in the altercation.

The existence of a duty is a legal question for the court to determine. Jupin v. Kask, 447 Mass. 141, 146 (2006). The foreseeability of the risk of injury may be a question for the court to resolve in certain circumstances. Luisi v. Foodmaster Supermarkets, Inc., 50 Mass.App.Ct. 575, 579 (2000). At the same time, “(e]ach element of the tort presents itself normally as an issue of fact; there is proper reluctance to withdraw the issue from the jury .. .” Or v. Edwards, 62 Mass.App.Ct. 475, 490 (2004).

Balbek’s duty as a commercial landlord is the same as that imposed by common law, because Balbek maintained control over all common areas of the rented premises according to the terms of its lease with DV-8. See Whittaker, 418 Mass. at 201. As a result, Martineau's reliance on Anderson v. Dunkin’ Donuts, Inc. is misplaced. See 60 Mass.App. 1126, 2004 WL 784928 at *1 (2004) (Rule 1:28) (determining that lessee of a premises could not be held liable as commercial landlord, where there was no evidence that it maintained control over its sublessee’s common areas).

Courts have analyzed reasonable foreseeability both as a limit on the duty of care and as the key to establishing causal connection between a breach and the resulting harm. Id. at 198-99 & n.3.

See also McCauliff v. Cap’ns Lounge, Inc., 14 Mass. L. Rptr. 674, 2002 WL 1558334 at *2-3 (Mass.Super. 2002) (Murphy, J.) (concluding that bar operator and owner of building were not responsible for negligently supervising a noisy patron who attacked another patron over a disagreement about a Patriots game, where there was no evidence that the noisy patron had attacked others at bar or anyone else prior to the incident, that the venue had a history of such fights, or that the noisy patron’s eviction from the bar would have eliminated the risk of an attack).

Daniel is not liable in tort based upon G.L.c. 138, §26, which requires a liquor licensee to appoint a local manager, or upon its implementing regulation, 204 Code Mass. Regs., §2.05(2). Neither §26, nor §2.05(2) establishes a cause of action to hold managers of licensed establishments liable for injuries resulting from illegal conduct on the licensed premises. See Gottlin v. Herzig, 40 Mass.App.Ct. 163, 165-67 (1996) (rejecting the implication of civil liability of a named local manager based on §26, where this statute discloses no special legislative concern for those injured by intoxicated patrons, and finding that regulation imposes responsibility only on licensee, not manager of licensed establishment).

The same applies to any attempt to pierce the corporate veil of Balbek, a limited liability company. See G.L.c. 156C, §22. The equitable doctrine of piercing the corporate veil also applies to limited liability corporations. See Middlesex Ret. Sys., LLC v. Board of Assessors of Billerica, 453 Mass. 495, 504-05 (2009) (“Although the doctrine usually applies to corporations, we see no reason why it should not also apply to limited liability companies").

Martineau claims that Paul’s discharge of a promissory note, securing a $130,000 loan to DV-8, after DV-8’s filing of a bankruptcy petition on January 27, 2010, is evidence of Paul’s intent to associate with DV-8.