**GIANT FOOD INC., a corporation, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 16507.**

United States Court of Appeals District of Columbia Circuit.

Argued March 22, 1962.

Decided June 14, 1962.

Petition for Rehearing En Banc Denied En Banc Sept. 18, 1962.

Petition for Rehearing Before the Division Denied Sept. 18, 1962.

Mr. Raymond R. Dickey, Washington, D. C., with whom Messrs. Bernard

Gordon and Robert F. Rolnick, Washington, D. C., were on the brief, for petitioner.

Mr. E. K. Elkins, Attorney, Federal Trade Commission, with whom Mr. James McI. Henderson, General Counsel, Federal Trade Commission, was on the brief, for respondent. Mr. Alan B. Hobbes, Asst. General Counsel, Federal Trade Commission at the time the record was filed, also entered an appearance for respondent.

Before WILBUR K. MILLER, Chief Judge, and BAZELON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This case is before us on petition for review of an order of the Federal Trade Commission directing petitioner, Giant Food Inc., to cease and desist from engaging in certain business practices held to violate § 5 of the Federal Trade Commission Act, 38 Stat. 719 (1914), as amended.[1] At the hearings before the hearing examiner, Giant chose to introduce no evidence after counsel supporting the complaint had rested his case.

Giant is the operator of an extensive chain of retail grocery stores and supermarkets, from which it resells to the general public the products it purchases from approximately 500 large suppliers situated throughout the United States. In 1954, 1955 and 1956, Giant sponsored certain "Anniversary" and "Candy Carnival" sales. In connection with these sales, Giant drafted and posted to its suppliers "contracts of participation" embodying an arrangement whereby each participating supplier would pay a specific sum of money to Giant, in return for which Giant would promote the products of each of the participating suppliers throughout the period allotted for the particular sale. About 150 of these contracts were actually executed by suppliers of Giant, as a consequence of which Giant received substantial sums (e. g., $37,875 during its 1955 "Anniversary" sale).

On November 21, 1955, the Commission issued a complaint which charged that Giant had violated § 5 of the Federal Trade Commission Act by inducing and receiving, from many of its suppliers, payments as compensation or consideration for services or facilities furnished by Giant to such suppliers in connection with the resale of products sold to it by the suppliers, which payments, to Giant's knowledge, had not been made available on proportionately equal terms by such suppliers to their other customers competing with Giant in the sale and distribution of those products. The cease and desist order presently under review is the end product of the hearings conducted as a result of that complaint.

On this appeal, Giant's first argument is that it did not violate § 5 of the Federal Trade Commission Act by inducing and accepting the above mentioned payments from its suppliers. The heart of Giant's argument in this respect is that § 2(d)[2] of the Clayton Act, as

---

1. 15 U.S.C.A. § 45:

"(a) (1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

\* \* \* \* \*

"(6) The Commission is empowered and directed to prevent persons, partnerships, or corporations, except banks, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to the Federal Aviation Act of 1958, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended, except as provided in section 227(b) of Title 7, from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

2. 49 Stat. 1527 (1936), 15 U.S.C.A. § 13 (d): "It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportional-

amended by the Robinson-Patman Act, only makes it unlawful for a seller to make discriminatory payments of the type involved here; with respect to a buyer, that section is silent. From this interpretation read in conjunction with § 2(f) [3] of the Act, where the buyer is covered by the general prohibition against a knowing inducement or receipt of a discrimination in price, Giant would have us conclude that the Commission is powerless to proscribe Giant's conduct under the broad language of § 5 of the Federal Trade Commission Act. We do not agree.

In effect, what the Commission says is that it is an unfair method of competition in commerce, and an unfair or deceptive act or practice in commerce, for a buyer to induce and receive from a seller payments which it knows or should know the seller cannot lawfully make. As so interpreted, we do not think the Commission's action amounts to usurpation of legislative powers. It is true, of course, that § 2(d) speaks only in terms of a seller. However, we are not inclined to read the silence of § 2(d) concerning a buyer as approbation on the part of Congress of a practice whereby a buyer can, with impunity, induce and receive from a seller payments which the buyer knows, or should know, the seller is forbidden by law to make. The Commission's decision in this case cannot be read as if the Commission were attempting to render illegal a practice which was once lawful. The situation is to the contrary: The Commission is merely declaring to be an unfair method of competition a practice which is plainly contrary to the policy of the Clayton Act as amended by the Robinson-Patman Act. In our opinion, the Commission is authorized to make such a determination. Grand Union Co. v. Federal Trade Comm., 300 F.2d 92 (2d Cir., 1962); American News

Co. and Union News Co. v. Federal Trade Comm., 300 F.2d 104 (2d Cir., 1962).

Giant next argues that the cease and desist order should be set aside because the Commission did not produce evidence that any injury to competition or competitors occurred as a result of Giant's action.

In the particular context of this case, we do not think that injury to competition is an essential element of a violation of § 5 of the Federal Trade Commission Act. Cf. F. T. C. v. Simplicity Pattern Co., 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079 (1959). Since the buyer's knowing participation in such an offense is inextricably linked with the activity of the seller, we are of the opinion that the two should not be accorded different treatment with respect to reciprocal engagements. Grand Union Co. v. Federal Trade Comm., supra.

Giant further argues that the Commission did not make out a case sufficient to show that Giant had, or should have had, knowledge that the payments it received from its suppliers were unlawful, citing as principal authority Automatic Canteen Co. of America v. Federal Trade Comm., 346 U.S. 61, 73 S.Ct. 1017, 97 L.Ed. 1454 (1953). As the Commission's complaint is composed of language borrowed partly from § 2(d) and partly from § 2(f) of the Clayton Act, as amended, the reasoning found in Automatic Canteen would seem to be applicable here. Accordingly, Giant argues, the Commission cannot make out a case against a buyer upon the mere showing that the buyer induced and received from the seller a promotional allowance coming within the purview of § 2(d); the buyer should not be forced to act at his peril whenever he induces and receives from a seller payments of the type involved here.

However true the foregoing statements may be, Automatic Canteen certainly

ly equal terms to all other customers competing in the distribution of such products or commodities."

3. 49 Stat. 1527 (1936), 15 U.S.C.A. § 13 (f): "It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."

cannot be read to mean that a buyer can plead want of knowledge as a successful defense to charges in a complaint such as the instant one, in circumstances where it appears that such want of knowledge on the buyer's part was culpable. Cf. American Motor Specialties Co. v. Federal Trade Comm., 278 F.2d 225 (2d Cir., 1960), cert. denied, 364 U.S. 884, 81 S.Ct. 169, 5 L.Ed.2d 105. This being so, the question becomes whether or not, upon the record as a whole, the Commission introduced enough evidence to show that Giant, at the time it induced and received the payments from its suppliers, possessed information sufficient to put upon it the duty of making inquiry to ascertain whether the suppliers were making such payments available on proportionally equal terms to Giant's competitors.

The record discloses that, in refusing to participate in Giant's program, many of its sellers gave as their reason the fact that they could not make the payments to Giant suggested by the terms of its program and at the same time also make proportionate payments available on an equal basis to their other customers competing with Giant. In this connection it is to be noted that the program drafted by Giant was explicit in its insistence that it was not intended to supplant or be fitted into any of the promotional programs then maintained by Giant's suppliers.[4] In other words, Giant's program was designed to exist independently of and/or coextensively with any of its suppliers' regularly available cooperative advertising programs. Moreover, the terms used by Giant in drafting its program were somewhat vague and general, thereby making it difficult for a supplier to formulate with any degree of certainty a program that would adequately satisfy its obligation in regard to Giant's competitors.

The cumulative effect of these facts supports a finding that Giant knew that it was the beneficiary of disproportionate payments through the program which it originated and sponsored. Cf. American News Co. and Union News Co. v. Federal Trade Comm., supra; American Motor Specialties Co. v. Federal Trade Comm., supra. We need not now determine how, under other circumstances, a buyer's inquiry must be carried out.

We have carefully examined Giant's other contentions, especially the assertion that it is a "packer" within the meaning of the Packers and Stockyards Act, 1921,[5] and find them without merit.

In conclusion, we reach the issue as to the broadness of the Commission's order. As the Supreme Court said in its recent decision in Federal Trade Comm. v. Broch & Co., 368 U.S. 360, 367–368, 82 S.Ct. 431, 7 L.Ed.2d 353 (1962):

"The severity of possible penalties prescribed by the amendments for violations of orders which have become final underlines the necessity for fashioning orders which are, at the outset, sufficiently clear and precise to avoid raising serious questions as to their meaning and application."

Accordingly, we think the order as presently worded is too broad, and should therefore be modified so as to reflect with more preciseness the actual situation as developed in the record under review. Specifically, the order should be directed toward the prohibition of a knowing inducement *and* receipt of, receipt of, or contracting for the receipt of discriminatory display and promotional allowances.[6] Grand Union Co. v. Federal Trade Comm., supra; American News Co. and Union News Co. v. Federal Trade Comm., supra. Cf. Swanee Paper Corp. v. Fed-

---

4. Giant's program expressly provided: "This contract does not alter or replace currently existing advertising or merchandising agreements between Giant Food Department Stores and participating manufacturers."

5. 42 Stat. 159, 7 U.S.C.A. §§ 181–231.

6. As presently constituted, we think the record is too inclusive to support a general prohibition against the mere "inducement" of a discriminatory promotional allowance.

**188**

eral Trade Comm., 291 F.2d 833 (2d Cir., 1961).

The order of the Commission will be modified as indicated in this opinion and, as modified, will be affirmed and enforced. Pursuant to Rule 38(*l*) of this court, 28 U.S.C.A., the Commission shall submit a proposed enforcement decree consistent with this opinion.

Order affirmed as modified and, as modified, will be enforced.