**SAFEWAY STORES, INC., Plaintiff,**

v.

**Orville L. FREEMAN, Secretary of Agriculture, Defendant.**

**The GREAT ATLANTIC & PACIFIC TEA CO., Inc., Plaintiff,**

v.

**Orville L. FREEMAN, Secretary of Agriculture, Defendant.**

**Civ. A. Nos. 1800-62, 1971-62.**

United States District Court

District of Columbia.

Sept. 7, 1965.

Arthur B. Hanson, Washington, D. C., for plaintiff Safeway Stores, Inc.

Denis G. McInerney, Washington, D. C., for plaintiff Great Atlantic & Pacific Tea Co.

Joseph M. Hannon and Gil Zimmerman, Asst. U. S. Attys., Washington, D. C., for defendant.

HOLTZOFF, District Judge.

These two cases present the question whether two chains of grocery stores are to be considered "packers" within the meaning of the Packers and Stockyards Act of 1921, 42 Stat. 159, 7 U.S.C. § 181 et seq. Each of the two plaintiffs operates a large number of retail grocery stores located in various States. At each of the stores various food products are sold, such as vegetables, staple groceries, as well as meats and meat products in various forms. It is claimed by the Department of Agriculture that because of some of its activities, the two chains are subject to regulation and are required to perform obligations imposed by the Packers and Stockyards Act.

The term "packer" for the purposes of this Act is defined as follows:

"The term 'packer' means any person engaged in the business (a) of buying livestock in commerce for purposes of slaughter, (b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or (c) of manufacturing or preparing livestock products for sale or shipment in commerce, or (d) of marketing meats, meat food products, livestock products, dairy products, poultry, poultry products, or eggs, in commerce; but no person engaged in such business of manufacturing or preparing livestock products or in such marketing business shall be considered a packer unless—(1) such person is also engaged in any business referred to in clause (a) or (b) of this section."

The remaining provisions of this section, which are found in Section 191 of 7 U.S.C., are immaterial to this discussion.

The Department of Agriculture, claiming that the two plaintiffs are packers within the Act, made a formal demand that they file reports with the Department pursuant to regulations promulgated by the Secretary in accordance with the power granted to him by statute. Thereupon, each of the plaintiffs brought an action against the Secretary for a declaratory judgment, seeking an adjudication that it is not a packer. Another Judge of this Court has held that the action lies and may be maintained. Accordingly, cross motions were made by the parties for summary judgment and the case is now before the Court on these motions.

The facts are not in dispute. Most of them appear in affidavits that are not contradicted. Some additional facts were conceded formally at the oral argument, leaving no material issue of fact for determination by a trial.

The two plaintiffs purchase large quantities of meat from slaughterhouses. Eventually this meat finds its lodging place in one of the retail stores of the chain. Between the time that the meat leaves the slaughterhouse and its arrival at its final resting place in the retail store, much of the meat, although not all, is delivered to a central warehouse or plant maintained by the chain. Certain operations in the way of preparing the meat for retail consumption are performed at these plants and warehouses, and thereafter these meat products are distributed among the retail stores. It may be repeated, as heretofore stated that these stores are located in various States. Consequently interstate commerce is involved in the transportation of the meats from the warehouse or plant to the stores and, therefore, these transactions may be said to be in commerce, as defined in Section 183 of 7 United States Code.

It is argued in behalf of the plaintiffs that when Congress enacted the Packers and Stockyards Act, its attention was directed primarily to the large packing houses and slaughterhouses located principally in Chicago, as well as several other big cities, and that its intention was to regulate only slaughterers and wholesalers. As a matter of fact counsel for the plaintiffs are no doubt correct in urging that the aim of Congress was pointed primarily against big slaughterhouses and meat packing concerns located principally in Chicago. It does not follow, however, that the Act must be limited to slaughterers and wholesalers. The

word "wholesaler" is not found in the definition of "packer" contained in the statute.

When the Act was enacted the large chains of grocery stores were not in existence to the same extent as they are today and it may well be that for this reason the Congress concentrated its attention principally on slaughterers and meat packing establishments. In many industries the developments of recent years have led to a situation where the wholesaler or the jobber is entirely or partially eliminated and the retailer, owning numerous outlets, also performs functions that previously were fulfilled by wholesalers.

█ The question, as the Court sees it, is not whether the plaintiffs are wholesalers, but whether they perform functions that are elsewhere carried out by wholesalers. ·There would seem to be little doubt that if the meat involved in these cases were purchased by a wholesale concern from a slaughterhouse, that the operations which concern us here were performed at the plant or warehouse of the wholesaler and then the meats so prepared were resold to the chain stores, the wholesale concern would be within the terms of the Act. Here the functions that are elsewhere carried on by a wholesaler are performed by the owner of the retail stores. The operations are not conducted at the stores, but at central points which serve to eliminate the middleman or the wholesaler.

█ The Court is of the opinion that a reasonable construction of the Act must include the activities performed by the plaintiffs at their warehouses and plants in respect to preparation of meats. It is clear, however, as is conceded by the Government, and as was held by the Court of Appeals for the Fourth Circuit in Crosse & Blackwell Co. v. Federal Trade Commission, 262 F.2d 600, that the plaintiffs are subject to the Act only in respect to those activities that comprise the operations performed in respect to meat at their warehouses and plants and not any of their other activities or the sales of food products of other types.

The plaintiffs' counsel rely, in support of their contention that their clients are not subject to the Act, on the case of Giant Food, Inc. v. Federal Trade Commission, decided by the Court of Appeals for the District of Columbia Circuit, 113 U.S.App.D.C. 227, 307 F.2d 184. In that case the Federal Trade Commission sought to direct Giant Food, Inc., to cease and desist from engaging in certain practices which the Commission held violated the Federal Trade Commission Act. It was argued in behalf of the company, however, that it was a packer and, therefore, subject to the Packers and Stockyards Act and not within the provisions of the Federal Trade Commission Act. In other words, the situation was exactly the reverse of that presented here. This point was very briefly discussed in the opinion of the Court of Appeals, since that opinion was devoted principally to other issues. The Court of Appeals held that the assertion that the plaintiff was a packer within the meaning of the Packers and Stockyards Act was without merit. In order to discern the basis of that decision it is necessary to revert to the opinions of the Federal Trade Commission, which are reported in 54 Federal Trade Commission Decisions 1881, and 55 Federal Trade Commission Decisions 2058.

The facts as shown in those opinions were that the various operations performed by Giant Food, Inc., were conducted at the individual retail stores and not at any central warehouse or plant that served essentially as a wholesaler. Naturally, it is undisputed that the Act of Congress is not intended to touch individual retail stores. This Court is of the opinion that any activities performed by the plaintiffs at their individual stores are not subject to regulation under this statute. The distinction between the cases is that the plaintiffs own plants or warehouses at which they perform operations that come within the definition of meat packing, because they constitute preparation of meats or meat food products for sale or shipment in commerce. The plaintiffs distribute the meat products so prepared among their retail

stores. In other words, the chains in addition to operating retail stores, are their own wholesaler and their own distributor.

In the light of these considerations, the Court holds and rules that the two plaintiffs are to be considered "packers" within the definition of the Packers and Stockyards Act, in respect only to those operations as to meat and meat products that are performed at their warehouses, plants, and other central points. As to those activities they are subject to the obligations of the Act and the regulations of the Department of Agriculture promulgated in accordance with that statute.

The Court wishes to say that it is greatly indebted to all counsel for their very able and enlightening arguments in this matter.

Counsel may submit an order in accordance with the Court's ruling.