M. H. GORDON & SON, INC. *vs.* ALCOHOLIC BEVERAGES CONTROL COMMISSION; UNITED LIQUORS, INC., intervener. August 13, 1982. This is an appeal by the Alcoholic Beverages Control Commission (commission) and United Liquors, Inc., from an order entered in the Superior Court. That order enjoined enforcement of a decision of the commission which directed M. H. Gordon & Son, Inc. (Gordon), pursuant to the requirements of G. L. c. 138, § 25B(*d*), "to cease and desist from selling, transferring, or in any way supplying Massachusetts retail licensees, Molson [b]eer and [a]le . . . acquired from any source at a price different from that posted by the brand owner or his designated agent and then in effect, plus the cost of delivery from . . . [Gordon's] vendor to . . . [Gordon]." All parties agree that the order is one in the nature of a preliminary injunction appealable for full review under the provisions of G. L. c. 231,

§ 118, second par. We agree with the appellants that the judge erred as matter of law in granting the injunction.

1. A careful reading of the definition given to the term "price" (G. L. c. 138, § 25B[d]) by the decision in *M.H. Gordon & Son* v. *Alcoholic Beverages Control Commn.*, 371 Mass. 584, 591-592 (1976), in conjunction with the application of that definition to the facts appearing in *M.H. Gordon & Son* v. *Alcoholic Beverages Control Commn.*, 386 Mass. 64, 66, 68 (1982), indicates (i) that whatever significance may attach to the concept of "laid-in-cost" in the alcoholic beverages industry (see generally *National Distrib. Co.* v. *United States Treasury Dept.*, 626 F.2d 997, 1002 n.23 [D.C. Cir. 1980]), that concept has a more expansive meaning than the term "price" as used in § 25B(d); (ii) that the mere characterization of a required payment made by a local wholesaler to an out-of-State vendor (or to that vendor's creditor) as "freight" or "laid-in-cost" cannot make it any less a payment for the purpose of obtaining alcoholic beverages not directly available to the wholesaler from the brand owner; (iii) that the payments made by Gordon to the freight carrier of its New York vendor for transportation of Molson's products from Canada to New York constituted a payment to the vendor itself, which had the legal effect of increasing the price paid for the products; and (iv) that the aggregate sum paid by Gordon exceeded the filed price in violation of G. L. c. 138, § 25B(d). See 371 Mass. at 592; 386 Mass. at 68. The commission, as "final arbiter of the price at which alcoholic beverages are sold by suppliers to Massachusetts wholesalers" (371 Mass. at 595), therefore correctly determined that Gordon had obtained an unfair competitive advantage over similarly situated Massachusetts wholesalers by assuming and paying the "laid-in-cost" of its supplier, as distinguished from its own "laid-in-cost." The commission's decision to limit Gordon to paying the shipping charges incurred in transporting the products from New York to Massachusetts was proper, and was consistent with both § 25B(d), as judicially interpreted, and the minimum consumer price filing requirements set forth in G. L. c. 138, § 25C, as interpreted by the commission's regulation (204 Code Mass. Reg. 2.12[2][c] [1978]) on delivery charges. See *Casa Loma, Inc.* v. *Alcoholic Beverages Control Commn.*, 377 Mass. 231, 235 (1979). The fact that the commission's decision hinders Gordon to some degree in its efforts to import alcoholic beverages from out-of-State suppliers holding certificates under G. L. c. 138, § 18B, is not the point. As the first *Gordon* decision made plain, "§ 25B(d) explicitly prohibits the sale of any brand of alcoholic beverage to a Massachusetts wholesaler at any price except the [filed] price then in effect" (371 Mass. at 587), and that restriction applies across the board to all wholesalers in the same position as Gordon. Gordon's remedy in the circumstances is to petition the commission, pursuant to the last sentence of § 25B(d), as appearing in St. 1970, c. 140, § 2, for "permission . . . [to vary the price schedules] for good cause shown and for reasons not inconsistent with the purpose of

. . . [G. L. c. 138]." Beyond bare speculation, there is nothing in the present record to show that the commission would never exercise its discretion to grant such permission or that an effort by Gordon to seek such relief would be otherwise futile.

2. Gordon also argues that § 25B(d), as written and as applied, is unconstitutional (i) because it conflicts with the ban in the Sherman Act (15 U.S.C. § 1 et. seq. [1976]) against State sponsored policies which have the effect of maintaining resale prices and preventing competition among traders in competing goods; and (ii) because it creates an impermissible burden on interstate commerce in conflict with the commerce clause of the United States Constitution, art. 1, § 8. The Sherman Act argument is fully disposed of by the determination in the Supreme Judicial Court's second *Gordon* decision (386 Mass. at 70-73) that the commission's activity under § 25B(d) enjoys immunity from the antitrust laws under the "State action" doctrine first stated in *Parker* v. *Brown*, 317 U.S. 341 (1943), and more recently applied in *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U.S. 97 (1980). See also *Rice* v. *Norman Williams Co.*, 458 U.S. 654 (1982). The "as written" prong of Gordon's commerce clause argument is disposed of by a long line of United States Supreme Court cases stretching from *State Bd. of Equalization* v. *Young's Mkt. Co.*, 299 U.S. 59 (1936), to the *California* case, *supra*, which hold that a State's power to regulate the importation, consumption or use of intoxicating liquors within its borders under the Twenty-first Amendment to the United States Constitution "is totally unconfined by traditional Commerce Clause limitations." *Hostetter* v. *Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 330 (1964). In light of these cases, there appears to be nothing to support the contention that G. L. c. 138 conflicts with the commerce clause on its face. The plaintiff's likelihood of success on this point is therefore minimal. Gordon's "as applied" argument cannot be properly assessed in the absence of some demonstration that the pricing requirements of c. 138, as implemented by the commission, materially impede the flow of alcoholic beverages into the Commonwealth, or result in reduced sales here, or otherwise obstruct some aspect of interstate economic activity. It would be Gordon's burden to show the existence of such consequences. The few details furnished on the commission's present decision regarding the application of c. 138, § 25B(d), are far from sufficient to permit sound analysis of this argument.

We conclude that the ruling in the first numbered paragraph of the order of the Superior Court entered on May 14, 1981, is erroneous as matter of law, and, as a consequence, that the restraint against the commission imposed in the second numbered paragraph of that order must be, and hereby is, vacated.

*So ordered.*

*Gerald J. Caruso,* Assistant Attorney General, for Alcoholic Beverages Control Commission.

*James L. Quarles, III,* for the intervener.

*Michael Reilly* for the plaintiff.