WHITEHALL COMPANY LIMITED *vs.* MERRIMACK VALLEY
DISTRIBUTING COMPANY, INC., & another.[1]

No. 99-P-1743.

Norfolk. November 6, 2001. - December 30, 2002.

Present: BROWN, GREENBERG, & McHUGH, JJ.

*Alcoholic Liquors,* Price, Wholesaler. *Statute,* Construction. *Consumer Protection,* Availability of remedy, Unfair act or practice.

This court concluded that G. L. c. 93A, § 11, did not allow a liquor wholesaler to recover damages from a competing wholesaler who violated the price discrimination provisions of G. L. c. 138, § 25A, and from a retailer who sought and benefited from the discrimination, where the price discrimination alleged had an adverse impact simply on competitors, and not on competition, and thus was not an unfair method of competition or an unfair trade practice within the meaning of G. L. c. 93A, § 2. [856-863]

CIVIL ACTION commenced in the Superior Court Department on November 20, 1996.

Motions to dismiss and for reconsideration were heard by *Charles M. Grabau,* J.

*Robert S. Frank, Jr.,* for the plaintiff.

*Bruce W. Edmands* for Merrimack Valley Distributing Company, Inc.

*William D. O'Brien* for Atlas Liquors, Inc.

McHUGH, J. Reduced to essentials, the question in this case is whether G. L. c. 93A, § 11, allows the plaintiff, a liquor wholesaler, to recover damages from a competing wholesaler who allegedly violated the price discrimination provisions of G. L. c. 138, § 25A, and from a retailer who allegedly sought and benefited from the discrimination. A judge in the Superior Court said "no," and allowed the defendants' motion to dismiss. We agree that, in this case, the answer is "no," although we do

[1]Atlas Liquors, Inc.

so for reasons different from those upon which the motion judge relied. Consequently, we affirm the judgment dismissing the plaintiff's complaint.

Extracted from inconsequential diversions, the background is as follows. The plaintiff, Whitehall Company Limited, is a wholesaler of alcoholic beverages licensed under the provisions of G. L. c. 138, § 18. Merrimack Valley Distributing Company, Inc. (Merrimack), one of the two defendants, is a competing wholesaler, also licensed under G. L. c. 138, § 18. Atlas Liquors, Inc. (Atlas), the other defendant, is a licensed liquor retailer. See G. L. c. 138, § 15.

General Laws c. 138, § 25A, the statutory provision at the center of the present controversy,[2] is part of an extensive scheme under c. 138 for regulating distribution of alcoholic beverages. See generally *Miller Brewing Co.* v. *Alcoholic Bevs. Control Commn.*, ante 801 (2002). As part of that scheme, § 25A(*a*) prohibits brand owners and wholesalers from discriminating in price or in discounts for their customers' volume purchases or prompt payments.[3] The statute provides that violations of § 25A can lead to suspension of the violator's license, G. L. c. 138,

---

[2]The section provides as follows:

"No licensee authorized under this chapter to sell alcoholic beverages to wholesalers or retailers shall —

"(a) Discriminate, directly or indirectly, in price, in discounts for time of payment or in discounts on quantity of merchandise sold, between one wholesaler and another wholesaler, or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand or trade name and of like age and quality;

"(b) [Deleted by St. 1970, c. 140, § 1.]

"All price lists or price quotations made to a licensee by a wholesaler shall remain in effect for at least thirty days after the establishment of such price list or quotation. Any sale by a wholesaler of any alcoholic beverages at prices lower than the price reflected in such price list or quotation within such thirty day period shall constitute price discrimination under this section."

G. L. c. 138, § 25A, as amended through St. 1971, c. 494.

[3]The final paragraph of § 25A is a so-called "post and hold" provision that requires those who sell alcoholic beverages to wholesalers or retailers to submit to the Alcoholic Beverages Control Commission (ABCC) periodic schedules of prices at which they are prepared to sell such beverages and then

§ 23, or to imposition of criminal penalties, G. L. c. 138, §§ 2, 62.

In November, 1996, the plaintiff commenced the present action in Superior Court alleging that Merrimack had engaged in unfair competition and had committed an unfair or deceptive practice, all in violation of G. L. c. 93A, § 2, by failing to adhere to the § 25A antidiscrimination provisions.[4] The complaint also alleged that Atlas had committed similar violations by soliciting and receiving discriminatory discounts. See

to maintain those prices for a period of thirty days after the schedule becomes effective. In *Canterbury Liquors & Pantry* v. *Sullivan*, 16 F. Supp. 2d 41 (D. Mass. 1998), the United States District Court for the District of Massachusetts held that the post and hold provision was a per se violation of § 1 of the Sherman Act, 15 U.S.C. § 1, because that provision allowed sellers to set prices without effective State oversight and consequently did not qualify for "State action" immunity from the antitrust laws under the principles articulated by the Supreme Court of the United States in *Parker* v. *Brown*, 317 U.S. 341 (1943). See *Canterbury Liquors & Pantry* v. *Sullivan*, 999 F. Supp. 144 (D. Mass. 1998). See generally *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U.S. 97 (1980). In *Canterbury Liquors & Pantry* v. *Sullivan*, 16 F. Supp. 2d at 44, the Federal District Court reached that conclusion on the basis of a Ninth Circuit decision, *Miller* v. *Hedlund*, 813 F.2d 1344 (9th Cir. 1987), cert. denied, 484 U.S. 1061 (1988), and a dissent in a Second Circuit decision, *Battipaglia* v. *New York State Liquor Authy.*, 745 F.2d 166, 179 (2d Cir. 1984) (Winter, J., dissenting), cert. denied, 470 U.S. 1027 (1985), but without citing *M. H. Gordon & Son, Inc.* v. *Alcoholic Bevs. Control Commn.*, 386 Mass. 64, 70-73 (1982), which held that the ABCC did exercise sufficient supervision over execution of the post and hold provisions of G. L. c. 138, §§ 25B, 25D, to immunize them from the antitrust laws. In any event, the Federal District Court entered judgment declaring that the § 25A post and hold provision and the implementing regulations found in 204 Code Mass. Regs. §§ 6.00-6.07 were invalid and unenforceable. The ABCC did not appeal and, after dismissal of an appeal brought by another party, see *Sea Shore Corp.* v. *Sullivan*, 158 F.3d 51, 59 (1st Cir. 1998), the judgment became final.

[4]When filed, the complaint also alleged that the defendants had violated the § 25A "post and hold" provision. See note 3, *supra*. The Federal litigation over that provision was pending at the time and the plaintiff had intervened in that litigation as a plaintiff to urge that the provision violated the Sherman Act. When the plaintiff and others prevailed in the Federal litigation, the plaintiff was given leave to amend the Superior Court complaint to eliminate the "post and hold" claim. The amended complaint is the subject of the present appeal and contains no reference to alleged "post and hold" violations. In view of the result we reach on the merits, we need not explore the defendants' contention that the plaintiff's representations to the Superior Court about its intentions after resolution of the Federal action estopped it from pursuing the present claims.

G. L. c. 93A, § 11.[5] The plaintiff's complaint sought declaratory and injunctive relief as well as damages, compensatory and punitive.

Merrimack and Atlas moved to dismiss the complaint under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).[6] After initially denying the motion pending the outcome of related Federal litigation, see note 3, *supra*, the judge allowed it and judgment of dismissal entered.[7]

Our analysis begins with the familiar. A complaint cannot be dismissed pursuant to Mass.R.Civ.P. 12(b)(6) "unless it appears certain that the complaining party is not entitled to relief under any state of facts which could be proved in support of the claim." *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 68 (1992), quoting from *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 191 (1982). We apply that standard in an "exceedingly liberal manner." *Brum* v. *Dartmouth*, 44 Mass. App. Ct. 318, 321 (1998). Accord *Coolidge Bank & Trust Co.* v. *First Ipswich Co.*, 9 Mass. App. Ct. 369, 370-371 (1980). Nevertheless, the complaint must put the

---

[5]The plaintiff named nine additional wholesalers as defendants in the action, making similar allegations against each and claiming that Merrimack and the other nine were involved in a conspiracy to violate § 25A and "the laws which govern the sale of alcoholic beverages in Massachusetts." The plaintiff likewise named three other retailers, making allegations similar to those it made regarding Atlas. Read as a whole, the complaint alleged that the wholesalers were giving the retailers, and the retailers were seeking and receiving from the wholesalers, forbidden discounts or that, put somewhat differently, competition between wholesalers was impermissibly flourishing. The other wholesalers and retailers settled and consequently play no role in this appeal.

[6]At some point before the motion to dismiss was allowed, the plaintiff filed affidavits dealing with discovery issues and with certain aspects of the plaintiff's damages claim. In considering a motion filed under Mass.R.Civ.P. 12(b)(6), however, the court is limited to the contents of the complaint itself. See *Epstein* v. *Seigel*, 396 Mass. 278, 278-279 (1985). Nothing in the record suggests that the motion judge considered the contents of those affidavits in ruling on the motion to dismiss, and their content likewise plays no role in our review.

[7]Because of the result we reach regarding the plaintiff's claim against Merrimack, we need not separately assess Atlas's claim that it cannot be liable in any circumstances for receiving the benefits of any price discrimination because G. L. c. 138, § 25A, is aimed solely at brand owners and wholesalers. But c. 93A, § 11, not c. 138, § 25A, per se, is the focus of the plaintiff's complaint. As to that, see note 11, *infra*.

adversary on notice of the essential elements of the claim the pleader intends to assert. It is not enough that a viable claim lurks somewhere in "conclusory descriptions of a 'general scenario which could be dominated by unpleaded facts.' " *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 478 (2000), quoting from *Judge* v. *Lowell*, 160 F.3d 67, 77 (1st Cir. 1998).

Here, the plaintiff alleges that it has been damaged by price discrimination, pure and simple. Although it claims that the damaging price discrimination is forbidden by G. L. c. 138, § 25A, it does not maintain that it has a right of action under that statute.[8] Instead, it asserts that to engage in discrimination banned by § 25A is to engage in an unfair method of competition and to commit an unfair trade practice in violation of G. L. c. 93A, § 2, and that G. L. c. 93A, § 11, provides a right of action to recover resulting damages and more. Accordingly, the question for us is whether, without more, an allegation that a competing defendant has engaged in price discrimination forbidden by G. L. c. 138, § 25A, and that the plaintiff lost sales as a consequence, is enough to state a viable claim for relief under G. L. c. 93A, § 11.[9]

---

[8]Accordingly, we are not required to decide whether such an action exists. We note, however, that c. 138 contains no express provision for a private right of action and that § 25A was added to the General Laws by St. 1946, c. 304, the emergency preamble to which noted that the acts the statute prohibited "contribute[d] to a disorderly distribution of alcoholic beverages" and that deferred operation of the statute would "be contrary to the interests of temperance." See *Supreme Malt Prod. Co.* v. *Alcoholic Bevs. Control Commn.*, 334 Mass. 59, 62 (1956); *Miller Brewing Co.* v. *Alcoholic Bevs. Control Commn.*, ante at 807. But cf. *Capital Distrib. Co.* v. *Heublein, Inc.*, 50 Mass. App. Ct. 339, 342 (2000). We also note that G. L. c. 138, § 23, provides that the licensing scheme at the heart of the chapter's regulatory mechanism is not intended to create rights for individuals engaged in the liquor distribution business, but is instead designed to serve the public need and common good. Finally, we note that each reported case dealing with the subject has rejected private efforts to coax a right of action out of some alleged violation of c. 138. *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327 (1982) (§ 69); *Gottlin* v. *Herzig*, 40 Mass. App. Ct. 163, 166-167 (1996) (§ 26); *Wine & Spirits Wholesalers of Massachusetts, Inc.* v. *Net Contents, Inc.*, 10 F. Supp. 2d 84, 86-87 (D. Mass. 1998) (general violations of c. 138). See generally *All Brands Container Recovery, Inc.* v. *Merrimack Valley Distrib. Co.*, 54 Mass. App. Ct. 297, 300-303 (2002).

[9]The plaintiff could have, but did not, move to amend the complaint after the motion to dismiss was allowed. See Mass.R.Civ.P. 15(a), 365 Mass. 761

Violation of a specific statute that does not itself permit private recovery may give rise to a private claim under c. 93A if the violation amounts to an unfair method of competition or an unfair or deceptive practice independently prohibited by G. L. c. 93A, § 2, and if recovery under c. 93A is compatible with the objectives and enforcement mechanisms the underlying statute contains. See *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 76-78 (1977); *Ciardi* v. *Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 62-64 (2002). Compare *Reiter Oldsmobile, Inc.* v. *General Motors Corp.*, 378 Mass. 707 (1979); *Cabot Corp.* v. *Baddour*, 394 Mass. 720 (1985); *DePasquale* v. *Ogden Suffolk Downs, Inc.*, 29 Mass. App. Ct. 658, 662 (1990). Obviously, however, not every statutory violation amounts either to unfair competition or to an unfair practice. Therefore, before undertaking the often complex task of deciding whether maintenance of a private action under c. 93A is congruent with an underlying statute or statutes, one must determine whether the statutory violation also violates c. 93A, § 2. See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 754 (1993).

In determining whether price discrimination of the type the plaintiff alleges here violates § 2, we are guided by two express directions contained in c. 93A itself. First, c. 93A, § 2(*b*), states that, in any action brought, inter alia, under § 11, we are to "be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45[a][1]), as from time to time amended." The Federal Trade Commission (FTC) Act broadly prohibits "[u]nfair methods of competition . . . and unfair or deceptive acts or practices."[10] 15 U.S.C. § 45(a)(1). Second, c. 93A, § 11, provides that, in determining whether challenged conduct amounts to an "unfair method[] of competi-

---

(1974); Smith & Zobel, Rules Practice § 15.4 (1974). It chose not to seek an amendment and elected to stand on the theory expressed in the amended complaint as initially pleaded.

[10]Although the FTC Act "has heavy historical roots in antitrust law," *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 773 n.15 (1980), the FTC's powers are not constrained by the antitrust laws' precise contours. See *PMP Assocs., Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 595-596 (1975); *Ciardi* v. *Hoffmann-La Roche, Ltd.*, 436 Mass. at 68-70 (Sosman, J., dissenting). See also note 11, *infra*.

tion," we are to consider the provisions of G. L. c. 93, the Commonwealth's antitrust statute, in addition to FTC and judicial interpretations of the FTC Act.[11]

At the Federal level, the FTC has interpreted and applied § 5(a)(1) of the FTC Act to prohibit price discrimination if that discrimination is outlawed by § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a).[12] In turn, § 2(a) prohibits certain price discrimination by competing sellers, so-called discrimination at the primary line.[13] See *Federal Trade Commn. v. Anheuser-*

---

[11]The cited portion of § 11 is one of the exceptions countenanced by the broad provision of G. L. c. 93, § 14A, that "[t]he Massachusetts Antitrust Act shall have no effect upon the provisions of [c. 93A], except as explicitly provided in said [c. 93A]."

[12]When it adopted the broad language of § 5(a)(1) of the FTC Act, Congress "considered, and rejected, the notion that it reduce the ambiguity of the phrase 'unfair methods of competition' by tying the concept of unfairness to a common-law or statutory standard or by enumerating the particular practices to which it was intended to apply." *Federal Trade Commn. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 240 (1972). The FTC nevertheless has, recently at least, exercised sparingly the enforcement and interpretive powers that broad language invites. As the FTC explained in *In re Gen. Foods Corp.*, 103 F.T.C. 204, 365 (1984),

> "While Section 5 may empower the [FTC] to pursue those activities which offend the 'basic policies' of the antitrust laws, we do not believe that power should be used to reshape those policies when they have been clearly expressed and circumscribed" (footnote omitted).

See, e.g., *E.I. DuPont de Nemours & Co. v. Federal Trade Commn.*, 729 F.2d 128, 137-138 (2d Cir. 1984). In the area nominally covered by the Robinson-Patman Act, the FTC's only significant movement beyond the Act itself has occurred in the area of knowing buyer inducements of discriminatory promotional allowances and services, which, unlike knowing inducements of prohibited discriminatory prices, the Act itself does not prohibit. See 15 U.S.C. § 13(f). See generally *Grand Union Co. v. Federal Trade Commn.*, 300 F.2d 92 (2d Cir. 1962); *Giant Food, Inc. v. Federal Trade Commn.*, 307 F.2d 184 (D.C. Cir. 1962), cert. denied, 372 U.S. 910 (1963); Scher, Antitrust Advisor §§ 4.01-4.02, 4.39 (4th ed. rev. 2001).

[13]Section 2(a) also prohibits discrimination that injures competitors of a seller's favored customers (secondary line competition), *Federal Trade Commn. v. Morton Salt Co.*, 334 U.S. 37, 42-44 (1948), or has an adverse impact on competing customers of the favored and disfavored purchasers. *Falls City Indus., Inc. v. Vanco Bev., Inc.*, 460 U.S. 428, 436 (1983). See generally *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 408 n.7 (8th Cir. 2002); Reeves, Toward a Coherent Antitrust Policy: The Role of Section 5 of the Federal Trade Commission Act in Price Discrimination Regulation, 16 B.C.

*Busch, Inc.*, 363 U.S. 536, 542-543 (1960). That is the type of discrimination the plaintiff alleges here.

At the primary line, however, price discrimination is an unfair trade practice only if the discrimination has an adverse impact on competition itself, not simply an adverse impact on competitors.[14] As one commentator has explained,

> "Injury to competitors in the primary line may well be caused by competition which is 'fair.' Unless the lower price is below marginal cost, or unless so many sellers are driven out of the business that, in view of the power and purpose of the seller, a continuation of the discrimination would be inconsistent with the healthy continuation of a competitive market, the practice does not possess the requisite degree of unfairness necessary to fall within the policy of section 5 [of the FTC Act]."

Reeves, Toward a Coherent Antitrust Policy: The Role of Section 5 of the Federal Trade Commission Act in Price Discrimination Regulation, 16 B.C. Indus. & Com. L. Rev. 151, 184 n.161 (1975). See *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 905 (S.D.N.Y. 1997).

Put another way, at the primary line, the essence of a viable claim for price discrimination under § 2(a) of the Robinson-Patman Act, and, thus, under § 5(a)(1) of the FTC Act, is that "[a] business rival has priced its products in an unfair manner with an object to eliminate or retard competition and thereby gain and exercise control over prices in the relevant market." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993). The injury thereby created is similar to the injury produced by violating § 2 of the Sherman Act, 15 U.S.C. § 2, which prohibits monopolizing a market or attempting to do so. Accordingly, proof of prohibited discrimination at the primary line requires proof of two elements, i.e., that (a) the rival's prices are below an appropriate measure of the rival's

---

Indus. & Com. L. Rev. 151, 178-183 (1975). Those types of discrimination, and the separate analytical matrices attendant on them, are inapplicable here.

[14]At the secondary line, which this case does not involve, the Robinson-Patman Act does protect against injury to competitors. See note 13, *supra*. See also *In re Gen. Motors Corp.*, 103 F.T.C. 641, 701 (1984). See generally Scher, Antitrust Advisor § 4.03 (4th ed. rev. 2001).

cost, *Brooke Group Ltd.* v. *Brown & Williamson Tobacco Corp.*, *supra*, and (b) the rival has a reasonable prospect that its scheme will ultimately allow it to charge noncompetitively high, or supercompetitive, prices sufficient to recoup "the amounts expended on the predation, including the time value of the money invested in it." *Id.* at 225. In the last analysis, "[r]ecoupment is the ultimate object of an unlawful predatory pricing scheme; it is the means by which a predator profits from predation." *Id.* at 224.

The risk of supercompetitive prices spawned by predation is the social harm that justifies prohibiting primary line discrimination. Without that harm, or its realistic prospect, even predatory pricing is an insufficient trigger for regulatory intervention because such pricing "produces lower aggregate prices in the market, and consumer welfare is enhanced. Although unsuccessful predatory pricing may encourage some inefficient substitution toward the product being sold at less than its cost, unsuccessful predation is in general a boon to consumers." *Ibid.*

At the State level, the current version of c. 93, to which, as stated, c. 93A, § 11, directs the interpreter, contains no specific analog to the Robinson-Patman Act and no other specific reference to price discrimination. Until the first fourteen sections of c. 93 were revised and streamlined in 1978 by St. 1978, c. 459, § 1, however, G. L. c. 93, § 8, the embodiment of St. 1912, c. 651, § 1 (see *Opinion of the Justices*, 211 Mass. 620 [1912]), prohibited price discrimination carried out, inter alia, "for the purpose of destroying the business of a competitor and of creating a monopoly in any locality." Cf. *Commonwealth* v. *Dyer*, 243 Mass. 472, 498 (1922). The pre-1978 statute thus prohibited price discrimination with an adverse impact on competition at the primary line. While old § 8 disappeared in the 1978 streamlining, its residuum in the current provisions of c. 93[15] suggests that, at the primary line, only price discrimination

---

[15]Disappearance of the section is consistent with two features of the new, streamlined Massachusetts Antitrust Act. First, § 5 of the new Act globally prohibited all attempts to monopolize, of which old § 8 violations were but one variety. Second, insofar as competition at the primary line was concerned, G. L. c. 93, § 14F, which had been inserted by St. 1938, c. 410, and amended by St. 1941, c. 494, and which was unaffected by the 1978 changes, prohibited

designed to create a monopoly is an unfair practice or an unfair method of competition.

*J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535 (1976), a case the plaintiff cites to support its claim that c. 93A, § 11, provides a private remedy for all price discrimination that violates c. 138, § 25A, does not, in our view, tend in a direction different from that suggested by the FTC Act and our own c. 93. In *J. & J. Enterprises,* the plaintiff alleged that the defendants had violated several provisions of c. 138, including § 25A, and sought to recover damages under c. 93A, § 11. *Id.* at 536-537. The trial court allowed the defendant's motion to dismiss. The Supreme Judicial Court reversed, holding that, instead of dismissing the action, the court should have stayed all proceedings pending initiation and completion of proceedings before the ABCC.[16] *Id.* at 541.

Critical to an understanding of *J. & J. Enterprises,* however, is that the plaintiff did not just allege serial violations of c. 138. Instead, the plaintiff alleged that the defendants had attempted to create a monopoly and had engaged in trade-restraining combinations and conspiracies, all of which were prohibited by the antitrust provisions of c. 93, §§ 2, 9 (now c. 93, §§ 4, 5). According to the complaint, the violations of c. 138 were the particular acts and practices the defendants employed in carrying out their unlawful restraints of trade. *Id.* at 537-538. *J. & J. Enterprises,* thus, does not support the plaintiff's claim that price discrimination, without more, gives rise to a right of action under § 11 of c. 93A.

In sum, price discrimination without an adverse impact on

certain predatory pricing, whether or not discriminatory, done with the intent to injure either competition or competitors. At the primary line, therefore, § 14F already did the work of old § 8 and then some.

[16]Referral to the ABCC was necessary because trade practices permitted by a State agency charged with responsibility for overseeing a particular industry typically do not violate c. 93A. *SDK Med. Computer Serv. Corp.* v. *Professional Operating Mgmt. Group, Inc.,* 371 Mass. 117, 126-127 (1976). Moreover, the impact and effect of some industry practices are arcane and can be determined only with insights flowing from administrative expertise. See, e.g., *Whitehall Co., Ltd.* v. *Alcoholic Bevs. Control Commn.,* 7 Mass. App. Ct. 538 (1979); *M. H. Gordon & Son, Inc.* v. *Alcoholic Bevs. Control Commn.,* 14 Mass. App. Ct. 973 (1982); *Somerset Importers, Ltd.* v. *Alcoholic Bevs. Control Commn.,* 28 Mass. App. Ct. 381 (1990).

competition, and not simply on competitors, is not an unfair method of competition or an unfair trade practice within the meaning of G. L. c. 93A, § 2, at least when the discrimination occurs, as alleged here, at the primary line. Because the complaint alleges nothing more than price discrimination and injury to the plaintiff, a competitor, the complaint was rightly dismissed.[17]

*Judgment affirmed.*

---

[17]Given the allegations of the complaint, allegations that are tantamount to a claim that the defendants were engaged in illegal competition and not the restraint thereof, see note 5, *supra*, our decision is concerned solely with the existence in this case of a private right of action. It has no impact on the ABCC's power to enforce the price discrimination provisions of c. 138, § 25A, through administrative proceedings aimed at an alleged offender's license. See *Miller Brewing Co.* v. *Alcoholic Bevs. Control Commn.*, *ante* at 805-808.